IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL CROTZER, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-1998-L-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Court's order of reference dated June 28, 2010, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. For the reasons set forth herein, it is recommended that the case be reversed and remanded for further proceedings.

### I. BACKGROUND[1]

**A.    Procedural History**

Michael Crotzer (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act ("Act"). On November 22, 2005, Plaintiff filed for SSI and DIB, claiming that he was disabled since October 17, 2005, due to liver cirrhosis, and hepatitis B and C.  (Tr. at 89, 94, 113, 117, 137, 160).  His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 42- 56).  Plaintiff personally

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

appeared and testified at hearings held in February and June 2008. (Tr. at 21, 791). On August 20, 2008, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council. (Tr. at 5-16). In August 2009, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born on June 3, 1960, and was 48 years old at the time of the ALJ's decision. (Tr. at 5, 94, 89). He has obtained his GED and has prior work experience performing manual labor and working as a welder. (Tr. at 118, 121, 123-29, 136).

    **2.     Medical Evidence**

Plaintiff has a history of cirrhosis of the liver, ascites[2], diabetes, and hepatitis B and C. (Tr. at 89, 94, 199, 203). Additionally, the record is replete with notations of Plaintiff's drug and alcohol use. (Tr. at 209, 247-49, 268, 499).

On October 27, 2005, Plaintiff underwent a sonographically guided paracentesis at West Florida Hospital and approximately 1000mL of fluid was removed from his abdomen. (Tr. at 198). On October 31, 2005, Plaintiff returned to West Florida Hospital complaining of heat flashes and a swollen abdomen. (Tr. at 199). Ascites were marked, Plaintiff was prescribed pain medication, counseled to have a paracentesis, and discharged from the hospital. (Tr. at 199). The

---

[2] Accumulation of fluid in the abdominal cavity that indicates significant loss of liver function. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

next day, Plaintiff underwent an ultrasound guided paracentesis and approximately 2000mL of fluid was removed from his abdomen. (Tr. at 200). In addition, Dr. Christopher Dorvault opined that Plaintiff had no acute pulmonary abnormality and Plaintiff's heart, lungs, mediastinum, and pulmonary vasculature were normal. (Tr. at 250). On November 17, 2005, Plaintiff was diagnosed at Parkland Hospital with cirrhosis of the liver, cellulitis, and diabetes mellitus, after complaining of abdominal pain. (Tr. at 267). Plaintiff underwent another paracentesis that was unsuccessful, as the doctors "could not get any fluid." (Tr. at 268, 370).

In February 2006, Plaintiff's liver function test showed a significant improvement since November 2005. (Tr. at 202). In addition, physical examinations revealed no ascites on November 23 and December 8, 2005, and again on January 5, and February 16, 2006. (Tr. at 332-33, 337-38, 408, 450). However, on April 15, 2006, Dr. Mahmood Panjwani stated that Plaintiff's complaints were consistent with the diagnosis of chronic liver disease and that Plaintiff was being put on the liver transplant list. (Tr. at 203).

The first mention of Plaintiff's mental health concerns appeared on December 27, 2007. (Tr. at 691). Dr. Karen Frey listed depression as one of her diagnostic impressions based on Plaintiff acknowledging some indicators, even though Plaintiff denied being depressed and declined consideration for mental health counseling or medication. (Tr. at 691). On April 2, 2008, Dr. Kristen Grable stated that Plaintiff was receiving care at the Altshuler Clinic for major depressive disorder and had been prescribed Remeron. (Tr. at 696). A report from the Altshuler Clinic dated April 30, 2008, lists Plaintiff's psychiatric history to include worsening anger, sleep problems, anxiety, sadness, and depression. (Tr. at 701-02). On June 9, 2008, Dr. Gary Watkins opined Plaintiff's psychosis included anxiety, depression, difficulty concentrating, loss of

memory, insomnia, excessive worrying, and difficulty being around others. (Tr. at 765). Additionally, on November 5, 2008, Dr. Leilani Oana examined the Plaintiff and opined that Plaintiff suffered from major depressive disorder, evidenced by depression, crying spells, a sense of hopelessness about the future, isolation, low motivation, and insomnia. (Tr. at 772-77).

### 3. Hearing Testimony

The ALJ held two separate hearings: one in February 2008 and one in June 2008. (Tr. at 58). At the hearings, Plaintiff was represented by counsel and was the sole witness. (Tr. at 21-30, 789-829). During the February hearing, the ALJ read a letter into the record from Dr. Kenneth Yang and discussed with Plaintiff's attorney the fact that Plaintiff was not on a transplant list and whether Plaintiff met listing 5.05. (Tr. at 791-800). Additionally, Plaintiff testified that he lives at home with his mother, and that his typical day involved lying down and watching TV because "sitting up gets painful." (Tr. at 801). He further testified that the pain in his abdomen starts after about 30 minutes of sitting up and gets progressively worse. (Tr. at 801). Plaintiff was employed as a steel worker and first applied for Social Security in 2005. (Tr. at 803). Plaintiff has been compliant with his medications but admittedly has used cocaine. (Tr. at 805). Plaintiff has not had a lung test but has trouble catching his breath when he exerts himself. (Tr. at 809).

At the time of the hearing, Plaintiff was taking seven different medications resulting in multiple side effects including: dizziness, "zoning out," pain, and nausea. (Tr. at 811-12, 819). He goes to bed around 9 p.m. and wakes up around 5 a.m., usually not sleeping the entire night because the medications upset his stomach. (Tr. at 812). The only people Plaintiff interacts with are his mother and doctors, and he rarely drives. (Tr. at 813-15). Plaintiff has problems with his

vision, is diabetic, and began seeing Dr. Frey for psychological treatment about a month before the hearing. (Tr. at 820-23). He gets very agitated, is depressed, and gets angry about something everyday. (Tr. at 824-25).

At the June hearing, the focus was on Plaintiff's psychological issues. (Tr. at 22). Plaintiff testified the first psychiatrist he saw was Dr. Frey and she prescribed him Remeron. (Tr. at 23). Plaintiff then enrolled for service at Metrocare. (Tr. at 23). He stated that he sought mental health care services because "mother thinks I have problems." (Tr. at 24). Plaintiff believed his problems are that he gets aggravated, does not like to be around people, he "hate[s] everybody," and he has been diagnosed with depression. (Tr. at 24-25). When asked if he has suicidal thoughts, Plaintiff responded, "they say I do," and that he has those thoughts every other day but does not think he is going to act on them. (Tr. at 25-26). Plaintiff also stated he has problems with his concentration and memory. (Tr. at 26). Insofar as Plaintiff's physical problems, he testified that they are getting worse, he now shakes a lot, he cannot see or hear as well, and his stomach pain is constant. (Tr. at 28).

### C. ALJ's Findings

In his decision dated August 20, 2008, the ALJ found Plaintiff met the insured status requirements of the Act. (Tr. at 10). Plaintiff had not engaged in any substantial gainful activity since October 17, 2005, the alleged onset date. (Tr. at 10). Plaintiff had the severe impairments of cirrhosis of the liver/chronic liver disease, hepatitis B and C, and substance addiction disorder. (Tr. at 10). The ALJ further found Plaintiff's diabetes, "alleged" breathing problems, and mental impairment of major depressive disorder were non-severe. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20

5

C.F.R. §§ 404.1525, 416.925, 416.926. (Tr. at 12). Plaintiff was unable to perform his past relevant work. (Tr. at 14). Plaintiff had a residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. at 12). In addition, Plaintiff's substance addiction disorder was not material to a finding of disability. (Tr. at 15). However, considering Plaintiff's age, education, work experience, and RFC, Plaintiff acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy; therefore, Plaintiff was not disabled. (Tr. at 14-15). Plaintiff asks the Court to reverse the Commissioner's decision and, in the alternative, to remand for further proceedings. (Pl. Brief at 15).

## II. ANALYSIS

A.  **Legal Standards**

   1.  **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of

credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the SSI program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for DIB are identical to those governing the determination under a claim for SSI. *See id.* Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *See id.*

**2.      Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452

(5th Cir. 2000).

B. <u>**Issues for Review**</u>

Plaintiff presents the following issues for review:

(1) The ALJ erred in finding that Plaintiff's impairments do not meet or equal the requirements of listing 5.05B or, in the alternative, in not obtaining medical expert testimony;

(2) The ALJ erred in finding Plaintiff's mental impairments not severe;

(3) The ALJ's credibility assessment is not supported by substantial evidence;

(4) The ALJ's RFC finding is not supported by substantial evidence; and

(5) The ALJ's finding that Plaintiff retains the ability to perform other work existing in significant numbers in the national economy is not supported by substantial evidence.

(Pl. Brief at 1).

Only the second issue is addressed here since, as explained more fully below, remand is required for failure to apply the proper severity standard. Therefore, the Court need not consider Plaintiff's other claims.

C. <u>**Issue Two:**</u> **Did the ALJ err in finding Plaintiff's mental impairments not severe?**

Plaintiff contends that the ALJ erred in finding Plaintiff's mental impairments were not severe. (Pl. Brief at 1, 6-9). While Plaintiff's argument is framed as whether substantial evidence supports the ALJ's determination, the Court cannot determine if substantial evidence supports the ALJ's determination without first determining if the ALJ viewed the evidence under the correct legal standard. Therefore, the Court first addresses whether the ALJ applied the proper legal standard in determining whether Plaintiffs mental impairments were severe or non-severe

despite Plaintiff's counsel's failure to squarely address the issue. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 804-05 (N.D. Tex. Jan. 27, 2009) (addressing the issue of whether the ALJ applied the proper legal standard when the issue presented by the Plaintiff was whether the ALJ erred in finding Plaintiff did not have a medically determinable mental impairment).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Charlton v. Astrue*, No. 10-CV-0056, 2010 WL 3385002 at *6 (N.D. Tex. July 14, 2010). A literal application of these regulations is inconsistent with the Act because the definition includes fewer conditions than indicated by statute. *See Stone v. Heckler*, 752 F2d 1099, 1104-05 (5th Cir. 1985); *Charlton*, 2010 WL 3385002 at *6-7. Therefore, the Fifth Circuit holds that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101; *Charlton*, 2010 WL 3385002 at *6-7. Further, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Stone*, 752 F.2d at 1104; *Charlton*, 2010 WL 3385002 at *6-7.

In *Stone*, the Fifth Circuit held that it would assume that the "ALJ and Appeals Counsel have applied an incorrect legal standard to the severity requirement unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction we give to 20 C.F.R § 404.1520(c) is used." *Stone*, 752 F.2d at 1106; *Charlton*, 2010 WL 3385002 at *6-7. Nevertheless, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Charlton*,

2010 WL 3385002 at *6-7 (citation omitted).  Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration.  *Stone*, 752 F.2d. at 1106; *Charlton*, 2010 WL 3385002 at *6-7.

Here, when setting out the law in his opinion, the ALJ cited to *Stone* but stated that an "impairment or combination of impairments is 'severe' within the meaning of the regulations it if significantly limits an individual's ability to perform basic work activities." (Tr. at 46).  This is the standard set forth in 20 C.F.R. §§ 404.1520(c), 416.920(c) that *Stone* found to be inconsistent with the Social Security Act.  *Stone*, 752 F.2d at 1104-05; *Charlton*, 2010 WL 3385002 at *6.  The ALJ also stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work." (Tr. at 9)(citing to 20 C.F.R. §§ 404.1521, 416.921; SSRs 85-28, 96-3p, 96-4p).  Even though the ALJ cited to *Stone*, the Court must look beyond the use of "magic words" and here, there is no evidence that the ALJ applied the proper legal standard.  Unlike the standard set out by the ALJ, *Stone* does not allow for minimal interference with an individual's ability to work. *Charlton*, 2010 WL 3385002 at *6; *Ruby v. Astrue*, No. 3:08-CV-1012, 2009 WL 4858060 at *8 (N.D. Tex. Dec. 14, 2009).

The United States District Court for the Northern District of Texas is consistent in its refusal to find the standard applied in this case is the standard set out in *Stone*. *See Ruby*, 2009 WL 4858060 at *8; *Charlton*, 2010 WL 3385002 at *6-7; *Roberson v. Astrue*, No. 3:10-CV-0240, 2010 WL 3260177 at * 9-10 (N.D. Tex. Aug. 17, 2010); *Sanders v. Astrue*, No. 3:07-CV-1827, 2008 WL 4211146 at *7 (N.D. Tex Sept. 12, 2008).  The ALJ's standard recognized that a

11

non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work. *Foster v. Astrue*, No. H-08-2843, 2010 WL 1340671 at *12-13 (S.D. Tex. March 30, 2010). Although the United States District Court for the Northern District of Texas has recognized that the difference between the two statements may appear to be slight, the ALJ's construction is not an express statement of the *Stone* standard. *Ruby*, 2009 WL 4858060 at * 8.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of the parties have been affected." *Roberson*, 2010 WL 3260177 at * 10 (citations omitted). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. *Id*. The Fifth Circuit has left the lower courts no discretion to determine whether such an error is harmless. *Id*. Rather, in *Stone*, the Fifth Circuit mandated that, "unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1006; *Roberson*, 2010 WL 3260177 at *10.

While the ALJ cites to *Stone*, the express recitation of a standard inconsistent with the *Stone* standard creates an ambiguity. This ambiguity regarding whether the correct legal standard was used must be resolved at the administrative level. *Charlton*, 2010 WL 3385002 at *7; *Roberson*, 2010 WL 3260177 at *10. Thus, Fifth Circuit precedent requires that this case be remanded because the ALJ applied an incorrect legal standard of severity at Step 2. *Ruby*, 2009 WL 4858060 at *8; *Charlton*, 2010 WL 3385002 at *6-7; *Roberson*, 2010 WL 3260177 at *9-10; *Foster,* 2010 WL 1340671 at *12-13 .

## III. RECOMMENDATION

The Court recommends that the decision of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings consistent with this opinion.

**SO RECOMMENDED** October 21, 2010.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE